# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Roberto M.C.,

          Petitioner,

v.

 Markwayne Mullin, et al.,

          Respondents.

**AMENDED ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-02554
(MJD/SGE)

---

Pamela Guerrero, Bienvenidos Law Firm, Inc., Counsel for Petitioner.

David W. Fuller, Jaymarie Arlene Miranda, Assistant United States Attorneys, Counsel for Federal Respondents.

---

This matter is before the Court on Petitioner Roberto C.M,'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is currently unlawfully detained in violation of the Fifth Amendment Due Process Clause, the Fourth Amendment, and the Administrative Procedure Act ("APA"). Respondents challenge Petitioner's arguments, maintaining that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is not entitled to a bond hearing.

## I.   FACTS[1]

Petitioner is a citizen of Guatemala and resides in Burnsville, Minnesota. (Doc. 1 ¶ 35.) Petitioner has lived in the United States since November 2015.[2] (Id.) Petitioner originally entered the United States without inspection and had no contact with DHS until his most recent detention. (Id. ¶ 36.) Petitioner works in construction and siding. (Id. ¶ 35.)

Petitioner lives with his partner and three children. (Id.) His children, aged one, two, and four, are all United States citizens. (Id.) Petitioner's two-year-old son has a heart condition that requires regular doctor appointments and medication. (Id.)

On May 2, 2026, Petitioner was detained by the Burnsville Police Department. (Id. ¶ 36; Doc. 5 at 2.) Petitioner attributes this detention to a "family altercation," while Respondents indicate that Petitioner was arrested for domestic assault. (Doc. 1 ¶ 36; Doc. 5 at 2.) Neither party filed any supporting documentation on the detention.

---

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

[2] Respondents indicate that Petitioner entered the United States without inspection on or about November 2017. (Doc. 5 at 2.) The Court assumes this is a typographical error and that the difference in year is not relevant to the parties' arguments.

2

On May 5, 2026, Petitioner's employer paid the $1,000 bail amount, and Petitioner was released. (Doc. 1 ¶ 36.) When Petitioner was released, ICE agents were waiting for him outside the police station and arrested him. (Id. ¶ 37.) Respondents then transferred Petitioner to Freeborn County Jail in Albert Lea, Minnesota. (Id.)

Petitioner asserts that he was not detained pursuant to a warrant. (Id. ¶ 6.) Respondents, however, assert that Petitioner was served an I-200, "Warrant for Arrest of Alien," along with an I-862, Notice to Appear ("NTA") alleging the factual allegations supporting his detention. (Doc. 5 at 2, 8). To support their position, Respondents filed a copy of the I-200, which is dated May 3, 2026, and which was apparently signed by Petitioner on May 5, 2026, as well as the I-862, which is dated May 5, 2026. (Docs. 6-1; 6-4.)

Respondents also file a copy of Petitioner's I-213, Record of Deportable/Inadmissible Alien. (See Doc. 6-3.) The I-213 indicates that on May 3, 2026, an ICE Deportation Officer encountered Petitioner during "routine ICE Criminal Alien Program" operations at the Dakota County Jail. (Id.) The ICE Deportation Officer then "conducted an interview" with Petitioner, where Petitioner "freely admitted to illegally residing in the United States. (Id.) The ICE

3

Officer then reportedly lodged an Immigration Detainer, Form I-247A, and a Supervisory Deportation Officer issued the I-200. (Id.) The I-213 also lists that Petitioner had two prior arrests, one for Driving While Impaired, and another for Operating a Motorboat Under the Influence of Alcohol. (Id.) Neither party provides supporting documentation for these arrests.

Petitioner filed the instant Petition for Writ of Habeas Corpus on May 8, 2026. (Doc. 1.) The Court issued an Order to Show Cause on May 10, 2026, requiring Respondents to respond to Petitioner's petition and certify the "true cause and proper duration of Petitioner's confinement." (Doc. 3.) On May 15, 2026, Respondents responded to the Petition, and on May 20, 2025, Petitioner replied. (See Docs. 5, 7.)

On May 28, 2026, the Court granted Petitioner's petition. (Doc. 8.) The Court determined – after analyzing Petitioner's claim under the Mathews v. Eldridge three-part balancing test – that Petitioner's continued detention without an opportunity to be heard violates his procedural due process rights. (Id. at 8–16.) To remedy this violation, the Court ordered Respondents to provide Petitioner with a bond hearing within one week. (Id. at 15.) The Court also required that Respondents file notice within **two hours** upon the scheduling of

the bond hearing, so that Petitioner's counsel could adequately prepare for the hearing and/or find an immigration attorney to represent Petitioner at the hearing itself. (Id.)

On June 1, 2026, Respondents filed what was titled a "status update" with the Court. (Doc. 10.) But Respondents actually re-filed their response to the Petitioner's habeas petition. The Court brought this to the parties' attention, and Respondents corrected their initial filing.

On June 2, 2026, Respondents filed the correct status update, which informed the Court and Petitioner's counsel that Petitioner's bond hearing was scheduled for the following morning on June 3, 2026. (Doc. 11.) On June 8, Respondents informed the Court that Petitioner's bond hearing was held, and the Immigration Judge ("IJ") denied the bond after determining that Petitioner failed to establish that he does not pose a danger to the community. (Doc. 13.)

On June 8, 2026, Petitioner's counsel filed a status update with the Court, arguing that "[Petitioner's] bond hearing did not properly uphold his due process rights." (Doc. 12.) She flagged that Respondents filed their status update on June 2, 2026 for a 8:00 a.m. bond hearing on June 3, 2026. (Id. at 2.) Counsel also stated that once she filed a notice of representation for Petitioner's

immigration case on June 2, she could see that the notice of the scheduled bond hearing was filed in the Immigration Court electronic filing system on May 29. (Id. at 2–3.) The information on the date of the bond hearing was apparently not available to her before she filed her notice of representation.  She, instead, intended to rely on the Court's Order to have timely notice of the bond hearing. (Id. at 3.)

Petitioner's counsel also noted that during the bond hearing, the IJ found that Petitioner did not qualify for bond based on the danger he presents to society. (Id. at 4.) However, she indicated that "[l]ack of criminal evidence was flagged as an issue throughout the hearing" not only by her, but also by Respondent's counsel. (Id.)

In response to this filing, the Court ordered the parties to specify the evidence that was provided to the IJ to demonstrate that Petitioner is a danger to society. (Doc. 14.) Both parties submitted their evidence. (Docs. 15, 16.) In submitting their evidence, Respondents argued that the Court "lacks jurisdiction to review [the bond decision] under 8 U.S.C. § 1226(e)" but did not respond to Petitioner's initial position that Respondents had failed to comply with this

6

Court's Order regarding filing notice of the immigration hearing in CMECF.

(Doc. 16 at 1–2.)

## II.    DISCUSSION

Petitioner argues that his detention is unlawful on the following grounds: 1) as a violation of Petitioner's Fifth Amendment Due Process Rights (both substantive and procedural), 2) as a violation of the Petitioner's Fourth Amendment rights based on Petitioner's warrantless arrest, 3) as a violation of the APA. (Doc. 1 ¶¶ 41–66.)

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  District courts have jurisdiction to hear habeas challenges to immigration-related detention.  Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted).  This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout

7

immigration law." Id. The petitioner bears the burden to prove illegal detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

### B. Fifth Amendment Due Process

Petitioner argues that his ongoing detention "serves no lawful purpose and runs afoul of the substantive and procedural due process protections of the Fifth Amendment," warranting his immediate release. (Doc. 1 ¶ 5.) To support his procedural due process claim, Petitioner applies the Mathews v. Eldridge balancing test to argue that his continued detention without an opportunity to be heard violates his constitutional due process rights guaranteed by the Fifth Amendment. (Id. ¶¶ 53–58 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976).) To support his substantive due process claim, Petitioner argues that his detention is not reasonably related to its permissible purpose of ensuring a noncitizen's attendance at future immigration proceedings. (Id. ¶¶ 44–46.)

Respondents respond by arguing that Petitioner's entire due process argument is solely a substantive due process argument, as opposed to being properly raised as both procedural and substantive violations of the Due Process clause. (Doc. 5 at 2 ("Petitioner is not challenging the procedures available under

8

the statute, but Congress's <u>substantive</u> determination that aliens covered by §

1225(b)(2)(A) are not entitled to a bond hearing.") (emphasis in original).)

Respondents then argue that mandatory detention under § 1225 must only be

"rationally related to legitimate government interests," and that prior Supreme

Court precedent establishes detention for noncitizens pending removal satisfies

due process. (<u>Id.</u> at 3 (citing <u>Washington v. Glucksberg</u>, 521 U.S. 702, 728 (1997).).

Further, Respondents maintain that even if Petitioner's procedural due process

argument is considered, the <u>Mathews</u> factors "weigh against finding a Due

Process violation." (<u>Id.</u> at 7–8.)

### 1. Petitioner's Fifth Amendment Protections

First, the Court feels it necessary to acknowledge that Petitioner is entitled

to due process of law under the Fifth Amendment. The Fifth Amendment

provides, in pertinent part, that no person shall be "deprived of life, liberty, or

property, without due process of law[.]" U.S. Const. amend. V.  The United

States Supreme Court has made clear that the "Due Process Clause applies to all

'persons' within the United States, including aliens, whether their presence here

is lawful, unlawful, temporary, or permanent." <u>Zadvydas</u>, 533 U.S. at 693; <u>see</u>

<u>also</u> <u>Trump v. J. G. G.</u>, 604 U.S. 670, 673 (2025) (holding that "'[i]t is well

9

established that the Fifth Amendment entitles aliens to due process of law'" in the context of removal proceedings) (quoting <u>Reno v. Flores</u>, 507 U.S. 292, 306, (1993)). Therefore, Petitioner is protected by the constitutional protections contained within Fifth Amendment.

### 2. Procedural vs. Substantive Due Process

As stated, Respondents first argue that Petitioner's entire due process claim should be classified as substantive, rather than procedural. (Doc. 5 at 2–6.) The Court notes that Petitioner raised violations of the substantive and procedural protections of the Due Process Clause and notes that each of these claims raise distinct, legal arguments. Because procedural due process challenges specifically address the "adequacy of the procedures" used to deprive someone of their liberty, and Petitioner here argues that his detention without bond deprives him of such liberty, the Court will consider Petitioner's procedural due process challenge as properly raised. <u>Mathews</u>, 424 U.S. at 335.

### 3. Mathews v. Eldridge Balancing Test

Turning to the merits of Petitioner's procedural due process claim[3], to determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 321.

Respondents claim that based on the first factor, Petitioner may have an interest to remain in the United States even without lawful status, but that "his interest is defined by statute." (Doc. 5 at 8 (citing DHS v. Thuraissigiam, 591 U.S. 103, 107 (2020).) Even though Respondents did not expand their analysis, the Court disagrees that Thuraissigiam limits Petitioner's private interest. In Thuraissigiam, a noncitizen was detained immediately after entering the country at the southern border. 591 U.S. at 114. He was detained for expedited removal

---

[3] Respondents cite the Eighth Circuit's decision in Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024) but do not argue that it precludes Petitioner's procedural due process argument outright. Still, such argument has already been considered and rejected by this Court. See e.g., Orlando R.V.V. v. Blanche, Civ. No. 26-1903, slip op. (D. Minn. Apr. 28, 2026).

pursuant to 8 U.S.C. § 1225. Id. The Supreme Court determined that the petitioner was not entitled to a bond hearing because a noncitizen in his position "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 140.

However, Thuraissigiam is easily distinguishable on the facts. The petitioner in Thuraissigiam "was apprehended 25 yards from the border and was thereafter continuously detained." Manuel G. v. Blanche, No. 26-cv-2385, 2026 WL 1256358, at *4 (D. Minn. May 7, 2026). The Court is persuaded by the Sixth Circuit's recent decision in Lopez-Campos, where the Court determined that the factual predicate for Thuraissigiam "merely reinforces our longstanding understanding that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.'" 2026 WL 1283891, at *12 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)). Because Petitioner here has been living in the United States for several years without detection, the Court finds that the holding in Thuraissigiam does not limit his private interest under the Mathews balancing test.

12

Instead, the Court finds that the first factor weighs heavily in Petitioner's favor. The Supreme Court has referred to the interest in being free from physical detention the "most elemental of liberty interests." See Hamdi v. Rumsfield, 542 U.S. 507, 529 (2004); see also Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). Petitioner is currently detained in the Freeborn County Jail, where he has been for almost a month in circumstances that very likely mirror "criminal incarceration." See Gunaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) ("[w]hen assessing [the first factor], courts consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration." (citing Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021); Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020)). By his continued detention, Petitioner is also undoubtedly experiencing the deprivations of incarceration, like the loss of companionship and income. Further, Petitioner has established clear community and familial ties in the years he has spent living in the United States. Petitioner has three children who are United States citizens, and he contributes to the

13

economy through his construction work. Therefore, considering Petitioner demonstrates significant private interests affected by his ongoing detention, the first Mathews factor favors Petitioner.

The second Mathews factor requires to the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as consider "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d 750, 734 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335). The Court agrees with the decision in Rodriguez Brizuela v. Noem, where the court stated that "a substantial risk of erroneous deprivation of liberty exists" for "a noncitizen who was arrested within the United States and lacks any prior release by immigration authorities, but who has established a life here in the United States" when he is detained without bond. No. 5:26-CV-0279-JKP, 2026 WL 752257, at *6 (W.D. Tex. Mar. 12, 2026) (citation omitted).

Further, as the court in Jesus Alejandro G. A v. Blanche noted, detention during removal proceedings is "'constitutionally permissible'" but "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their

14

immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (first citing Demore v. Kim, 538 U.S. 510, 513 (2003), then citing Zadvydas, 533 U.S. at 690). An individual bond hearing, where both parties have an opportunity to be heard, would allow an Immigration Judge to determine whether Petitioner's detention is, in fact, necessary to ensure Petitioner will be present at his future immigration proceedings as well as not pose any danger to his community.

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Respondents argue that "the government's strongest interest in detaining someone pending their removal proceedings is to make sure that the person appears for immigration proceedings and to ensure we are complying with how Congress set up this aspect of immigration law." (Doc. 5 at 8.) As stated above, the Court acknowledges that the government has a substantial interest in protecting the public – perhaps even more so here, where Petitioner was detained originally after his arrests for domestic assault –

15

however, such "interest[] [is] not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G. v. Blanche, No. 26-CV-2385 (SRN/ECW), 2026 WL 1256358, at *5 (D. Minn. May 7, 2026).

Instead, granting Petitioner a bond hearing – which is hardly an "administrative burden"– will give both parties an opportunity to adequately present arguments on the dangerousness and flight risks posed by Petitioner's specific circumstances. This due process safeguard will then necessarily "reduce the risk of erroneous deprivation without imposing significant burdens on the Government." Selvin, 817 F. Supp. 3d at 734.

The above analysis leaves the Court with but one possible conclusion: the factors all weigh in Petitioner's favor. For these reasons, the Court concludes that mandatory detention pursuant to § 1225(b)(2), as applied to Petitioner in this case, violates his constitutional right to procedural due process. The appropriate remedy for such constitutional deprivation is to provide him with an opportunity to be heard. In this case, that means a bond hearing.

The Court acknowledges that the parties here spend additional briefing on Petitioner's substantive due process rights and Petitioner's arrest, arguing about the sufficiency of the warrant as well as the Respondents' compliance with the

16

INA's warrantless arrest statute and the Fourth Amendment. However, because the Court finds that Petitioner's current detention without a bond hearing violates his Fifth Amendment due process protections, the Court need not consider Petitioner's alternative arguments. See Faysal N. v. Noem, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026) (stating that when the court's decision on one of the petitioner's asserted theories for relief meant that the petitioner's detention was unlawful, the court did not need to reach the petitioner's alternative arguments).

### III.    ADEQUACY OF RESPONDENTS' COMPLIANCE WITH THIS COURT'S ORDER

As part of its Order, the Court required Respondents to file notice of Petitioner's bond hearing directly with the Court within two hours of the hearing being scheduled. (Doc. 8.) The Court made clear in its Order that this notice requirement was specifically designed to prevent situations in which counsel representing a petitioner in a habeas proceeding, but not in their immigration proceedings and who therefore had no way to independently learn of petitioner's bond hearing and, as a result, had minimal ability to prepare/secure additional counsel to represent petitioner when and if counsel even learned of the hearing. That is precisely what happened here.

Respondents appear to have known about Petitioner's bond hearing as early as May 29, 2026. (See Doc. 12.) Yet, notice was not properly filed with the Court until June 2, 2026, merely one day before the actual hearing took place. As Petitioner explains, Respondents' failure to comply with this Court's Order left her minimal time to inform Petitioner of the scheduled hearing, no time to secure other immigration representation, and limited opportunity to collect evidence and prepare for the hearing. (Doc. 12 at 4.)

This failure is particularly significant given the purpose of the Court's Order. As explained above, the Court determined that Petitioner's mandatory detention without an opportunity to be heard violates his due process rights. The Court's requirement that he receive a bond hearing was intended to remedy that constitutional violation by providing him a meaningful opportunity to be heard. Respondents' failure to provide timely notice undermined that purpose.

Respondents are correct that the Court cannot review the IJ's ultimate decision to deny Petitioner bond. See 8 U.S.C. § 1226(e). However, the Court here is not reviewing the IJ's bond determination; instead, the Court is merely assessing Respondents' compliance with the Court's prior Order to ensure that Petitioner received the meaningful opportunity to be heard that the Order was

18

designed to ensure. After such assessment, the Court finds that Respondents failed to comply with this Court's Order, Petitioner's due process rights were once again violated, and Petitioner is entitled to another bond hearing.

## IV.   ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.   The Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART** as follows:

   a.   Petitioner's detention under 1225(b)(2) violates his due process rights.

   b.   Respondents are ordered to provide Petitioner with a second bond hearing within one week after the issuance of this Order;

   c.   Respondents are ordered to file notice of the bond hearing directly with the Court within two (2) hours of its scheduling[4]; and

   d.   If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

      i.   Release Petitioner into Minnesota;

---

[4] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

    ii.   At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

    iii.   With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

2.    Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

3.    Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 17, 2026          s/Michael J. Davis
                                Michael J. Davis
                                United States District Court